# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT PLEICKHARDT, | |
| Plaintiff, | CIVIL ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| MAJOR MOTORS OF PENNSYLVANIA, INC. d/b/a MAJOR HYUNDAI OF STROUDSBURG, and NADDER NEJAD, | Civ. No. _____ |
| | Electronically Filed |
| Defendants. | |

Plaintiff, Scott Pleickhardt, by his counsel, Law Office of Peter C. Wood, Jr., PC, brings this action against Defendants, Major Motors of Pennsylvania, Inc. d/b/a Major Hyundai of Stroudsburg, and Nadder Nejad, and alleges upon knowledge as to himself and his own acts, and otherwise upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff has initiated the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA"), Pennsylvania Minimum Wage Act ("MWA") and Pennsylvania Wage Payment and Collection Law ("WPCL"). Specifically, Defendants enacted an unlawful sick leave policy, terminated Plaintiff within days of him questioning the legality of that policy, and

made unauthorized and illegal deductions from Plaintiff's final paycheck that resulted in Plaintiff earning less than the minimum hourly wage required by federal and state law. As a result of Defendants' actions, Plaintiff has been harmed.

## PARTIES

2. Plaintiff Scott Pleickhardt ("Plaintiff") is an adult individual residing at 2131 Second Avenue, Jefferson Township, Pennsylvania 18436.

3. Defendant Major Motors of Pennsylvania, Inc. d/b/a Major Hyundai of Stroudsburg ("Major Hyundai" or the "Company") is a Pennsylvania corporation with a principal place of business located at 1534 North 9th Street, Stroudsburg, Pennsylvania, 18360.

4. Defendant Nadder Nejad ("Nejad") (together with Major Hyundai, "Defendants") is an owner and officer of Major Hyundai, and acted in the interest of the Company at all times relevant herein.

5. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted in the course and scope of their employment with and for Defendants.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's federal claims in accordance with 28 U.S.C. § 1331 because this civil action arises under a law of the United States and seeks redress for violations of a federal law. This Court has

jurisdiction over Plaintiff's state law claims because they are supplemental to Plaintiff's underlying federal claims and derive from a common nucleus of operative facts pursuant to 28 U.S.C. § 1367.

7. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

8. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

9. Defendant Major Hyundai is a new and used car dealer engaged in the interstate purchase, sale, and servicing of automobiles and parts.

10. Plaintiff was hired by Defendant Major Hyundai as a service advisor in or around February 2014.

11. Plaintiff was classified as an exempt employee pursuant to the FLSA and MWA, as were several other employees in his department, including an additional service advisor, five automobile technicians, and one manager.

12. Plaintiff and Defendants agreed that Plaintiff would be paid a weekly salary of $525.00, plus commissions based on his labor sales.

13. Plaintiff was proficient at his job and continually refined and developed his skills and abilities. In fact, Plaintiff's total monthly labor sales regularly doubled those of the other service advisor in his department.

14. In mid-October 2016, Defendants enacted a sick leave policy (the "Policy") applicable to "[a]ll salary and commission based employees" in its service department. The Policy provided, among other things, that "[a]ll employees receive one personal and two sick days a year," "[t]hree lateness count as one absence," and "employees that require time off that they do not have available will have the time missed deducted from their pay at the end of the month based on their base pay and commission averaged out as an hourly rate." (A true and correct copy of the Policy is attached hereto as Exhibit "A".)

15. On the same day that Plaintiff was given a copy of the Policy, Plaintiff complained to Defendant Major Hyundai's service department manager, Brian Healy ("Healy"), and later to Defendant Nejad, that he believed the Policy was illegal. Defendant Nejad responded that the Policy was lawful and would be enforced as written.

16. The following day, after researching the FLSA, Plaintiff again complained to Healy that he believed the Policy violated the FLSA and was illegal.

4

17. The Policy was unlawful in the following respects:

a) The FLSA requires that employees classified as exempt pursuant to 29 U.S.C. § 213(a)(1) be paid "on a salary basis." Although an employer may make deductions from an employee's salary for absences of one or more full days occasioned by sickness if the deduction is made in accordance with a bona fide sick leave policy, the sick leave policy must allow for a reasonable number of absences on account of sickness in order to be considered bona fide. If a sick leave policy is not bona fide, an employer may not make deductions from employee pay due to sickness without violating the salary basis requirement. The Policy did not allow for a reasonable number of absences and was therefore not bona fide, yet it impermissibly provided for pay deductions due to absence from service department employees exempted under 29 U.S.C. § 213(a)(1);

b) As noted above, an employer may in certain circumstances make deductions from the salary of an employee exempted under 29 U.S.C. § 213(a)(1) for absences of one or more full days. When calculating the amount of the deduction, the employer may use the hourly or daily equivalent of the employee's full weekly salary or any other amount proportional to the time actually missed by the employee. The Policy, however, improperly deducted earned commissions, which are unrelated to the amount of time worked and/or

5

missed, from service department employees exempted under 29 U.S.C. § 213(a)(1);

c) An employer may not make deductions from the salary of an employee exempted under 29 U.S.C. § 213(a)(1) for absences of less than a full day. The Policy's unqualified reference to deductions for "time off" and "time missed" contemplated deductions of partial-day absences, in violation of the FLSA;

d) The Policy's deduction of time missed based on salary and commission averaged as an hourly rate placed employees in jeopardy of earning less than minimum wage, in violation of the FLSA and MWA; and

e) Defendants provided employees with one paid personal day and two paid sick days per year. The WPCL defines "wages" to include "fringe benefits," which in turn is defined to include "vacation, holiday, or guaranteed pay." Thus, the Policy's conversion of three instances of lateness into one absence violated the WPCL by deducting from an employee's sick leave balance in excess of leave actually taken.

18. On November 3, 2016 – slightly more than two weeks after Plaintiff complained about the Policy – Healy issued Plaintiff a write-up for billing a customer for two repairs to the customer's vehicle that were allegedly subject to an

extended coverage contract, and for failing to rectify the error with the customer. (A true and correct copy of the write-up[1] is attached hereto as Exhibit "B".)

19. The allegations set forth in the write-up were false. Specifically, Plaintiff had spoken with the customer to resolve the coverage issue on October 31, 2016 and November 1, 2016, as soon as he had learned that the customer disputed the charge. Moreover, the customer's extended coverage contract had expired prior to the date that the second repair was performed. In other words, Plaintiff had correctly billed the customer for the second repair.

20. After presenting Plaintiff with the write-up, Healy told Plaintiff that according to Defendant Nejad, Plaintiff was required to pay Defendants $535.35, which amount represented the cost allegedly incurred by Defendants due to Plaintiff's purported error, or he would be terminated. *See* Exhibit B ("[Plaintiff] is responsible for the $535.35 difference.").

21. Plaintiff refused to comply with Defendants' extortionate demand, and was terminated immediately.

22. Plaintiff received his final paycheck in mid-November 2016. The paycheck covered the pay period beginning on October 26, 2016, and ending on November 8, 2016. The earnings statement accompanying the paycheck indicated

---

[1] The write-up is dated November 2, 2016, but Plaintiff was off from work that day. The write-up was not actually presented to Plaintiff until November 3, 2016.

that Defendants had made a "miscellaneous" deduction in the amount of $417.71. (A true and correct copy of the earnings statement is attached hereto as Exhibit "C".) As a result of the deduction, Plaintiff's pre-tax pay was $107.29, and his net pay was $11.60. *See* Exhibit C.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Retaliatory Termination)

23. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

24. At all times relevant and material herein, Defendant Major Hyundai was engaged in interstate commerce and/or the production of goods for commerce, and had annual gross revenues in excess of $500,000.00.

25. At all times relevant and material herein, Defendants were "employer[s]" within the meaning of 29 U.S.C. § 203(d).

26. At all times relevant and material herein, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e).

27. 29 U.S.C. § 215(a)(3) provides that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to [the FLSA]."

28. Defendants enacted the Policy in mid-October 2016. The Policy violated the FLSA and state law for the reasons set forth above.

29. Plaintiff immediately complained in good faith that he believed the Policy was illegal. Plaintiff had no disciplinary history in his nearly three years of employment with the Company prior to making his complaint.

30. Approximately two weeks after Plaintiff made his complaint, he was issued a write-up under false pretenses and terminated.

31. Defendants' issuance of the write-up and termination of Plaintiff were in direct retaliation for Plaintiff's complaint that the Policy violated the FLSA. Indeed, in terminating Plaintiff, Defendants disregarded the Company's own disciplinary protocol, which required a verbal warning, written warning, and suspension for misconduct prior to termination.

32. The conduct engaged in by Defendants constitutes reckless indifference to the rights of Plaintiff sufficient to subject Defendants to punitive damages.

33. Plaintiff has been injured as a result of Defendants' conduct in that he has suffered, and continues to suffer, severe emotional distress, humiliation, embarrassment, anguish, person hardship, career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages.

34. Due to Defendants' willful FLSA violation, Plaintiff is entitled to recover compensatory damages, punitive damages, reasonable attorneys' fees, and costs and disbursements of this action.

## COUNT II

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
(Failure to Pay Minimum Wage)

35. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

36. At all times relevant and material herein, Defendant Major Hyundai was engaged in interstate commerce and/or the production of goods for commerce, and had annual gross revenues in excess of $500,000.00.

37. At all times relevant and material herein, Defendants were "employer[s]" within the meaning of 29 U.S.C. § 203(d).

38. At all times relevant and material herein, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e).

39. At all times relevant and material herein, Defendants had control over Plaintiff's pay.

40. As a service advisor, Plaintiff was exempt from the FLSA's overtime pay requirements, but Defendants were nonetheless required to pay Plaintiff a minimum hourly wage of $7.25 under the FLSA.

41. Plaintiff's final paycheck covered the pay period beginning on October 26, 2016, and ending on November 8, 2016. Between October 26, 2016 and November 2, 2016 – the last full day worked by Plaintiff prior to his termination – Plaintiff worked approximately 48 hours. Plaintiff was paid a gross salary of $525.00 for those 48 hours.

42. The earnings statement accompanying Plaintiff's final paycheck indicated that Defendants made a "miscellaneous" deduction in the amount of $417.71 from Plaintiff's gross salary, resulting in a pre-tax salary of $107.29. Accordingly, Plaintiff earned less than minimum wage for each hour worked during his final week of employment with the Company.

43. Defendants' conduct constituted a willful violation of the FLSA.

44. Due to the Defendants' willful FLSA violation, Plaintiff is entitled to recover his unpaid minimum wages, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action.

## COUNT III

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
(Failure to Maintain Records)

45. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

46. 29 U.S.C.A. § 211(c) requires a covered employer to keep records of the number of hours worked by its employees.

47. Upon information and belief, Defendants did not keep a record of the hours worked by Plaintiff. In fact, the earnings statements accompanying Plaintiff's paychecks routinely displayed Plaintiff's hours worked as "0.00".

48. Through their conduct, Defendants violated the FLSA.

49. Plaintiff therefore requests all such relief that this Court deems appropriate.

## COUNT IV

### WRONGFUL TERMINATION
(Pennsylvania Common Law)

50. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

51. On November 2, 2016, Defendants demanded payment from Plaintiff in the amount of $535.35 based on their mistaken belief that Plaintiff had incorrectly charged a customer for repairs to the customer's vehicle. Plaintiff was told that if he did not pay the demanded sum, he would be terminated.

52. Plaintiff refused to pay the demanded sum, and was terminated immediately.

53. Defendants' conditioning of Plaintiff's continued employment on his agreement to pay an arbitrary sum of money, and termination in response to his refusal to do so, was tantamount to criminal extortion and violated the public policy of this Commonwealth.

54. The conduct engaged in by Defendants constitutes reckless indifference to the rights of Plaintiff sufficient to subject Defendants to punitive damages.

55. Plaintiff has been injured as a result of Defendants' conduct in that he has suffered, and continues to suffer, severe emotional distress, humiliation, embarrassment, anguish, person hardship, career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages. Plaintiff therefore demands payment of compensatory and punitive damages.

## COUNT V

**VIOLATION OF THE WAGE PAYMENT AND COLLECTION LAW**
**(Failure to Pay Salary as Agreed)**

56. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

57. At all times relevant and material herein, Defendants were "employers" within the meaning of 43 P.S. § 260.2a.

58. At all relevant times herein, Plaintiff was employed by Defendants.

59. At all times relevant and material herein, Defendants had control over Plaintiff's pay.

60. The WPCL states that "wages shall be paid in lawful money of the United States or check, except that deductions provided by law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employe, may be made," and that "[w]henever an employer separates an employe from the payroll, . . . the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 P.S. §§ 260.3, 260.5.

61. Plaintiff and Defendants agreed that Plaintiff would be paid a weekly salary of $525.00.

62. Defendants made a "miscellaneous" deduction in the amount of $417.41 from Plaintiff's final paycheck. The deduction was not authorized by Plaintiff and was not permitted by law.

63. Through their conduct, Defendants violated the WPCL, causing Plaintiff to suffer damages.

64. Plaintiff demands payment of all wages due, in addition to liquidated damages of $500.00 in accordance with 43 P.S. § 260.10, plus reasonable attorneys' fees.

## COUNT VI

## VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT
(Failure to Pay Minimum Wage)

65. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

66. At all times relevant and material herein, Defendants were "employer[s]" within the meaning of 43 P.S. § 333.103(g).

67. At all times relevant herein, Plaintiff was an "employe" within the meaning of 43 P.S. § 333.103(h).

68. At all times relevant and material herein, Defendants had control over Plaintiff's pay.

69. Defendants were required to pay Plaintiff a minimum hourly wage of $7.25 under the MWA.

70. Plaintiff's final paycheck covered the pay period beginning on October 26, 2016, and ending on November 8, 2016. Between October 26, 2016 and November 2, 2016 – the last full day worked by Plaintiff prior to his termination – Plaintiff worked approximately 48 hours. Plaintiff was paid a gross salary of $525.00 for those 48 hours.

71. The earnings statement accompanying Plaintiff's final paycheck indicated that Defendants made a "miscellaneous" deduction in the amount of

$417.71 from Plaintiff's gross salary, resulting in a pre-tax salary of $107.29. Accordingly, Plaintiff earned less than minimum wage for each hour worked during his final week of employment with the Company.

72. Defendants' conduct constituted a violation of the MWA.

73. Due to the Defendant's violation of the MWA, Plaintiff is entitled to recover his unpaid minimum wages, as well as reasonable attorneys' fees and costs and disbursements of this action.

## COUNT VII

### VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT
(Failure to Maintain Records)

74. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

75. 43 P.S. § 333.108 and 34 Pa. Code § 231.31 require an employer to keep a true and accurate record of, among other items, the hours worked each day and each workweek by its employees. In addition, 34 Pa. Code § 231.36 requires an employer to furnish a statement to all employees with each payment of wages indicating the number of hours worked during the specific pay period.

76. Upon information and belief, Defendants did not keep records of the hours worked by Plaintiff.

77. Defendants did not provide a statement to Plaintiff indicating the number of hours worked during each pay period. In fact, the earnings statements accompanying Plaintiff's paychecks routinely displayed Plaintiff's hours worked as "0.00".

78. Through their conduct, Defendants violated the MWA.

79. Plaintiff therefore requests all such relief that this Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

a) Compensatory, liquidated, and punitive damages;

b) Pre-judgment interest;

c) Attorneys' fees and costs; and

d) All other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues so triable.

Respectfully submitted,

**Law Office of Peter C. Wood, Jr., PC**

Date: 2/28/2017   BY:  s/ Peter C. Wood, Jr.
Peter C. Wood, Jr., Esq.
(PA 310145)

230 Wyoming Avenue, Suite 5
Kingston, PA 18704
Phone: (570) 234-0442
Fax: (570) 266-5402

*Attorney for Plaintiff*