IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT PLEICKHARDT,

    Plaintiff,

    v.

MAJOR MOTORS OF PENNSYLVANIA, INC. d/b/a MAJOR HYUNDAI OF STROUDSBURG, and NADDER NEJAD,

    Defendants.

NO. 3:17-CV-0375

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss Plaintiff's Complaint (Doc. 8) filed by Defendants Major Motors of Pennsylvania, Inc. d/b/a Major Hyundai of Stroudsburg ("Major Motors") and Nadder Nejad ("Nejad") (collectively, "Defendants"). Plaintiff Scott Pleickhardt ("Plaintiff" or "Pleickhardt") alleges that his former employer, Major Motors, violated the Fair Labor Standards Act, 29 U.S.C. § 209 *et seq*. ("FLSA"), the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq*. ("MWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("WPCL") and wrongfully terminated his employment in violation of public policy. (*See* Doc. 1, *generally*). Defendants now move to dismiss Plaintiff's minimum wage claims under the FLSA and MWA, his WPCL claim, and his wrongful termination claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. 8-9). Because Plaintiff fails to allege facts sufficient to satisfy the public policy exception to Pennsylvania's general rule of employment at-will, Plaintiff's wrongful termination claim will be dismissed with prejudice. However, because Plaintiff adequately pleads his FLSA and MWA failure to pay minimum wage claims and his WPCL failure to pay agreed upon salary claim, Defendants' Motion to Dismiss those claims will be denied.

### I. Background

The facts as alleged in Plaintiff's Complaint are as follows:

Plaintiff was hired by Major Motors as a service advisor in or around February 2014. (*See* Doc. 1, ¶ 10). At the time, Plaintiff was classified as an exempt employee pursuant to the FLSA and

MWA. (*See id*. at ¶ 11). The parties agreed that Plaintiff would be paid a weekly salary of $525.00 plus commissions based on labor sales. (*See id*. at ¶ 12). Plaintiff's total monthly labor sales regularly doubled those of the other service advisors in the same department. (*See id*. at ¶ 13).

In mid-October 2016, Defendants enacted the "Service Department Time off and Absence Policy" (the "Policy"). (*Id*. at ¶ 14 and Ex. A). The Policy provided, *inter alia*: "[a]ll employees receive one personal and two sick days a year"; "[t]hree lateness count as one absence"; and "[a]ll salary and commission based employees that require time off that they do not have available will have the time missed deducted from their pay at the end of the month based on their base pay and commission averaged out as an hourly rate." (*Id*.).

The day he received a copy of the Policy, Plaintiff complained about its legality to Brian Healy ("Healy"), the service department manager, and Nejad, owner of Major Motors. (*See id*. at ¶¶ 4, 15). Nejad responded that the Policy was legal and would be enforced as written. (*See id*. at ¶ 15). The next day, Plaintiff reiterated to Healy his view that the Policy was illegal. (*See id*. at ¶ 16).

On November 3, 2016, slightly more than two weeks after Plaintiff complained about the Policy, Healy issued Plaintiff a write-up that was based on false allegations regarding purported mistakes made by Plaintiff on a customer bill. (*See id*. at ¶¶ 18-19 and Ex. B). Healy, as instructed by Nedad, informed Plaintiff that he would be terminated unless he repaid Defendants $535.35, the cost which was allegedly incurred as a result of Plaintiff's purported billing errors. (*See id*. at ¶ 20 and Ex. B). Plaintiff refused to reimburse Defendants and he was immediately terminated. (*See id*. at ¶ 21).

Plaintiff received his final paycheck in mid-November 2016 for the October 26, 2016-November 8, 2016 pay period. (*See id*. at ¶ 22 and Ex. C). Plaintiff worked approximately forty-eight (48) hours between October 26, 2016 and his last full day, November 2, 2016, and was paid a gross salary of $525.00. (*See id*. at ¶ 41). The earnings statement accompanying the paycheck indicated a "miscellaneous" deduction by Defendants in the amount of $414.71. (*See id*. at ¶ 22 and Ex. C). Plaintiff's pre-tax pay for his final pay period was $107.29, and his net pay for that period was $11.60. (*See id*.).

Based on the foregoing, Plaintiff commenced this action by filing a seven-Count Complaint

against Defendants on February 28, 2017 containing the following claims: (1) Count I - FLSA retaliatory termination; (2) Count II - FLSA failure to pay minimum wage; (3) Count III - FLSA failure to maintain records; (4) Count IV- wrongful termination; (5) Count V - WPCL failure to pay salary as agreed; (6) Count VI - MWA failure to pay minimum wage; and (7) Count VII - failure to maintain records. (*See* Doc. 1, *generally*). By Stipulation of the parties, Counts III and VII of the Complaint were dismissed with prejudice. (*See* Doc. 7, *generally*; Doc. 10, *generally*). On April 24, 2017, Defendants filed the instant Motion to Dismiss and supporting brief seeking dismissal of Counts II, IV, V, and VI of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. 8-9, *generally*).[1] Plaintiff filed his brief in opposition to Defendant's Motion on May 8, 2017, (*see* Doc. 11, *generally*), and Defendants' reply brief was submitted on May 22, 2017. (*See* Doc. 13, *generally*). Oral argument was held on Defendants' Motion on September 18, 2017 at the request of Plaintiff. (*See* Docs. 13-14, *generally*). The Motion to Dismiss is now ripe for disposition.

## II. Discussion

**A.    Legal Standard.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*,

---

[1]    Defendants did not move to dismiss Count I of the Complaint. (*See* Docs. 8-9, *generally*).

550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*,

147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## B.   Defendants' Motion to Dismiss.

As stated, Defendants seek dismissal of Plaintiff's claims for failure to pay minimum wage in violation of the FLSA (Count II) and MWA (Count VI), failure to pay salary as agreed in violation of the WPCL (Count V), and wrongful termination (Count IV).

### 1.   Plaintiff's Failure to Pay Minimum Wage Claims.

Plaintiff asserts that Defendants violated the FLSA and MWA by failing to pay the statutorily prescribed minimum wage during his final week of employment with Major Motors.  (*See* Doc. 1, Counts II and VI).  According to Plaintiff, he worked approximately forty-eight (48) hours between October 26, 2016 and November 2, 2016 and was paid a gross salary of $525.00.  (*See id.* at ¶ 41, 70).  However, as a result of the "miscellaneous" deduction from his paycheck in the amount of $417.71, Plaintiff earned less than minimum wage for each hour worked during his final week of employment. (*See id.* at ¶¶ 42, 71).

A *prima facie* case under the FLSA requires the plaintiff to allege: (1) he was an "employee," as defined by the FLSA; (2) the defendant was "engaged in commerce," as defined by the FLSA; and (3) he was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week. *Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, at *3 (E.D. Pa. Oct. 7, 2016) (citing 29 U.S.C. § 216(b); *Mell v. GNC Corp.*, No. 10-945, 2010 WL 4668966, at *5 (W.D. Pa. Nov. 9, 2010)).  Because the MWA "substantially parallels" the FLSA, federal courts apply the same standards in evaluating claims brought under either statute.  *See id.* at *7; *see also Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc.*, No. 13-6564, 2014 WL 12606156, at *4 (E.D. Pa. July 30, 2014).  Both the federal minimum wage and the Pennsylvania minimum wage are currently $7.25 per hour.  *See Verma v. 3001 Castor, Inc.*, No. 13-3034, 2016 WL 6962522, at *8 n.11 (E.D. Pa. Nov. 29, 2016) (citing 29 U.S.C. § 206; 43 P.S. § 333.104 (a.1)).

Defendants argue that Plaintiff's minimum wage claim fails because, despite the contrary allegations in the Complaint, Plaintiff was paid in excess of $7.25 per hour during his last pay period.

(*See* Doc. 9, 7-8; Doc. 12, 3-6). As support, Defendants reference an "Earnings Record" for Plaintiff, a document which is not attached or referenced in the Complaint and which was instead provided by Defendants in support of the instant Motion. (*See* Doc. 1, *generally*; *see* Doc. 9, Ex. A). The "Earnings Record" purports to show a commission payment to Plaintiff in the amount of $3,143.61 on November 10, 2016. (*See* Doc. 9, Ex. A). Defendants assert that this commission payment when added to the payment Plaintiff received for his final pay period conclusively demonstrates that Plaintiff's hourly pay was substantially greater than that required by the FLSA and the MWA. (*See* Doc. 9, 7-8; Doc. 12, 3-6).

The "Earnings Record" and the information contained therein will not be considered in resolving the Motion to Dismiss. In deciding a motion to dismiss, "'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196). "In deciding motions under Rule 12(b)(6), courts may consider documents integral to or explicitly relied upon in the complaint, or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 & n.7 (3d Cir. 2016) (quotations, citations, and alteration omitted). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

Here, the "Earnings Record" supplied by Defendants in support of the Motion to Dismiss cannot be utilized in assessing the adequacy of the Complaint. The "Earnings Record" is not integral to the Complaint, nor is that document cited in the Complaint. Likewise, the claims set forth by Plaintiff are not "based" on the "Earnings Record." *See Schmidt*, 770 F.3d at 249. Accordingly, the Earnings Record will not be considered in evaluating Defendants' Motion to Dismiss. Further, in contrast to the document provided by Defendants, the Earnings Statement for Plaintiff's final pay period that is attached to the Complaint, (*see* Doc. 1, Ex. C), indicates that $0.00 were paid in commissions during that time. (*See id.*). For purposes of the instant motion to dismiss, Plaintiff has

adequately averred that Defendants violated the FLSA and MWA by failing to pay the statutorily prescribed minimum wage. As Defendants advance no other arguments in support of the dismissal of the failure to pay minimum wage claims, Counts II and VI of the Complaint will not be dismissed.

### 2. Plaintiff's Wage Payment and Collection Law Claim.

In Count V of the Complaint, Plaintiff contends that Defendants violated the WPCL by failing to pay the agreed upon $525.00 weekly salary for Plaintiff's final pay period. (*See* Doc. 1, Count V). Plaintiff contends he did not authorize the "miscellaneous" $414.41 deduction from his final paycheck and that Defendants' deduction of same was not permitted by law. (*See id*. at ¶¶ 61-62). Defendants seek dismissal of the WPCL claim on the basis that Plaintiff failed to plead the existence of a contract. (*See* Doc. 9, 12-13; Doc. 12, 9-10).

The WPCL provides, in pertinent part, that "[w]henever an employer separates an employe from the payroll, . . . the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 P.S. § 260.5(a); *see also* 43 P.S. § 260.3(a). The WPCL "does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." *Banks Engineering Co., Inc. v. Polons*, 697 A.2d 1020, 1024 (Pa. Super. Ct. 1997). "To present a wage-payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (internal quotation omitted). A written employment contract is not required to state a WPCL claim: "Pennsylvania courts and the Third Circuit permit WPCL claims to be based on implied oral contracts between the employee and employer." *Gordon v. Maxim Healthcare Servs., Inc.*, No. 13-7175, 2017 WL 3116153, at *10 (E.D. Pa. July 21, 2017) (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Braun*, 24 A.3d at 954). "[T]he plaintiff need only plead the existence of some contractual agreement to pay wages that defendant now owes to the plaintiff. Such a binding agreement may be express or, as the Third Circuit noted in *De Asencio*, it may be implied." *Euceda v. Millwood, Inc.*, No. 12-895, 2013 WL 4520468, at *5 (M.D. Pa. Aug. 26, 2013).

Plaintiff's Complaint sufficiently alleges an agreement to pay wages to support a WPCL claim at this stage of the proceedings. (*See* Doc. 1, *generally*). Plaintiff avers that he was hired by Major Motors to work as a service advisor in or about February 2014. (*See id*. at ¶ 10). At that time, the parties agreed that Plaintiff would receive a weekly salary of $525.00. (*See id*. at ¶¶ 12, 61). During his final week of employment, Plaintiff worked approximately forty-eight (48) hours. (*See id*. at ¶ 41). For this week, though, Defendants did not pay Plaintiff the agreed upon salary and instead made an unauthorized $417.41 deduction from Plaintiff's final paycheck. (*See id*. at ¶ 62). These allegations adequately plead the existence of a contractual agreement by which Defendants became bound to pay wages for services rendered and which Defendans breached by failing to pay same. *See Euceda*, 2013 WL 4520468, at *5; *see also Gordon v. Maxim Healthcare Servs., Inc.*, No. 13-7175, 2014 WL 3438007, at *4 (E.D. Pa. July 15, 2014) ("Although Gordon did not work for Maxim according to the terms of any written agreement, she has averred that she provided services as a home healthcare aide in exchange for wages to be paid according to a week-long pay period, the payday for which followed in the next week. Gordon did not state specifically in her amended complaint that a contract existed between her and Maxim by virtue of the allegations made, but a party must plead facts, not legal conclusions, to meet our pleading standards."). As this is the sole ground for dismissal of the WPCL claimed raised by Defendants, Plaintiff will be permitted to proceed with his WPCL claim.

### 3. Plaintiff's Wrongful Termination Claim.

Plaintiff also claims that he was wrongfully terminated from his employment with Defendants in violation of public policy. (*See* Doc. 1, Count IV). Specifically, Plaintiff contends that he was dismissed after refusing to repay his employer $535.35 for the alleged billing error. (*See id*. at ¶¶ 51-52). Plaintiff argues that such conduct was tantamount to criminal extortion and violates Pennsylvania public policy. (*See id*. at ¶ 53). In seeking dismissal of the wrongful termination claim, Defendants assert that Plaintiff's claim fails as a matter of law because Plaintiff's termination did not violate a clear mandate of Pennsylvania public policy. (*See* Doc. 9, 9-11; Doc. 12, 6-9).

In Pennsylvania, unless a statute or contract provides for the contrary, "either party may terminate an employment relationship for any or no reason." *Weaver v. Harpster*, 975 A.2d 555, 562

(Pa. 2009). However, Pennsylvania common law provides a cause of action for wrongful discharge in violation of clear mandates of public policy. *Id.* at 562-63. Wrongful discharge is an exception to the general principle that an employment relationship is terminable at-will and is narrowly construed. *Id.* at 563. Thus, the "public policy" exception has only been recognized by Pennsylvania courts in the "most limited of circumstances." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). Further, "the power of the courts to declare pronouncements of public policy is sharply restricted. . . . Rather, it is for the legislature to formulate the public policies of the Commonwealth." *Weaver*, 975 A.2d at 563. A court may declare "what is or is not in accord with public policy . . . 'only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it.'" *Id.* (quoting *Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n)*, 17 A.2d 407, 409 (1941)); *accord Kent v. Keystone Human Servs.*, 68 F. Supp. 3d 565, 569 (M.D. Pa. 2014) ("Courts have been reticent to recognize a public policy mandate inuring to the benefit of a terminated employee unless the employer has committed an illegal act or has induced its employee to do the same, because absent a violation of law, it is difficult for an at-will employee seeking recovery for wrongful discharge to point to a common law, legislative, or constitutional principle from which a clear public policy mandate could be inferred." (alteration, citation, and quotation omitted)). Public policy in Pennsylvania is determined by "examin[ing] the precedent within Pennsylvania, looking to [Pennsylvania's] Constitution, court decisions, and statutes promulgated by [the Pennsylvania] legislature." *Weaver*, 975 A.2d at 563 (citations omitted).

Here, Plaintiff argues that Defendants engaged in attempted theft by extortion in violation of 18 Pa. C.S.A. § 3923(a)(7)[2] when they demanded Plaintiff, under threat of termination, reimburse Defendants the cost allegedly incurred as a result of billing errors. (*See* Doc. 1, ¶¶ 51-53; Doc. 11, 9-12). Plaintiff contends that the public policy of the Commonwealth of Pennsylvania is violated

---

[2] Section 3923(a)(7) provides: "**(a) Offenses defined.**-- A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to: . . . (7) inflict any other harm which would not benefit the actor." 18 Pa. C.S.A. § 3923(a)(7) (emphasis in original).

when an employee is terminated in such circumstances. (*See id.*). Plaintiff's wrongful discharge claim will be dismissed.

In *Reese v. Tom Hesser Chevrolet-BMW*, 604 A.2d 1072, 1073 (Pa. Super. Ct. 1992), the Pennsylvania Superior Court addressed "whether the public policy of th[e] Commonwealth is offended where an employer demands that employees, on pain of dismissal, contribute pro-rata to cover the employer's loss on used vehicle sales, where the loss results from incorrect information provided by the employees to the lending bank in the regular course of business." There, the plaintiff was employed by the defendant as a used car salesman. *See id*. As part of the sale of vehicles, the defendant would arrange for financing with a local bank by telephone. *See id*. The local bank contacted the defendant about a vehicle sold by the plaintiff two years before, and the bank claimed that it was provided false information regarding the vehicle, resulting in the bank releasing funds in excess of the value of the vehicle. *See id*. The bank charged the defendant's account $1,200.00 for the loss from that sale and a similar transaction. *See id*. In response to the bank, the employer assessed $300.00 each against the sales manager, the finance manager, the plaintiff, and another salesman. *See id*. After the plaintiff refused to pay the assessment unlike the other three employees, the plaintiff was informed that failure to pay would result in dismissal from employment. *See id*. The plaintiff again refused and was terminated. *See id*. The plaintiff commenced litigation and alleged that he had been unlawfully discharged. *See id*. The trial court granted the defendant's motion for summary judgment. *See id*.

The issue raised by the plaintiff on appeal to the Superior Court was "where an employee is discharged for refusing to become the victim of a crime does his discharge violate the public policy of the Commonwealth of Pennsylvania?" *Id*. at 1074. The plaintiff in *Reese*, like Plaintiff here, argued that the employer's conduct constituted the threat of extortion under § 3923(a)(7), and, as a result, the plaintiff contended that "he was discharged for refusing to become a victim of a crime, which would offend public policy." *Id*. The Superior Court was not persuaded by the plaintiff's argument and affirmed the trial court's grant of summary judgment to the employer. *See id*. at 1074-75. The Superior Court explained:

> This case does not involve a threat by Hesser Chevrolet to inflict harm on Reese;

> rather, it involves the imposition of an assessment by an employer against an employee whose actions may have contributed to a $1200 loss. Reese does not attempt to fit Hesser Chevrolet's actions into any of the activities set forth in the first six subsections of Section 3923. We decline to determine that the threat of discharging an at-will employee for failure to join in the restitution surrounding several bad auto loans constitutes the infliction of "any other harm which would not benefit the actor [Hesser Chevrolet]." Reese does not argue that the dismissal of employees thought by their employer to have been responsible for losses is not intended to benefit the employer. We are unable to conclude that the fine imposed upon Reese and the other employees, on pain of discharge, amounted to extortion.

*Id*. (alterations in original).

*Reese* supports the conclusion that Plaintiff failed to identify an applicable public policy exception to Pennsylvania's general rule of employment at-will. As in *Reese*, this case involves the imposition of an assessment by Major Motors and Nejad against Pleickhardt for actions that may (or may not have) contributed to a $535.35 loss by Defendants. (*See* Doc. 1, *generally*). Indeed, even accepting as true Plaintiff's allegation that he did not cause the loss, (*see id*. at ¶ 19), the threat of discharging an at-will employee under the circumstances presented here where the employer has suffered a loss does not amount to the infliction of "any other harm that would not benefit" Defendants, nor does the assessment or fine imposed on Plaintiff amount to extortion. *Reese*, 604 A.2d at 1074. Moreover, and just as with the employee in *Reese*, Plaintiff "does not argue that the dismissal of employees thought by their employer to have been responsible for losses is not intended to benefit the employer." *Id*. While "[i]t may well be that the action of the employer was unfair to" Plaintiff, that conduct "does not rise to a level of a public policy violation." *Id*. at 1075; *accord Clark v. Modern Grp. Ltd*, 9 F.3d 321, 329-30 (3d Cir. 1993) (observing that the *Reese* court "[i]n analyzing the statute on extortion, . . . gave no consideration to the reasonableness of the employee's belief or the bad intentions of the employer. It focused instead on the legality or illegality of the demand.").[3]

---

[3] At oral argument, Plaintiff attempted to distinguish *Reese*, arguing that *Reese* does not preclude an employee's wrongful termination claim in circumstances where the employer threatens an assessment against an employee based on a loss that did not actually occur, *i.e.*, the employer fabricated the existence of a loss. Assuming Plaintiff's understanding of *Reese* is correct, the distinguishing characteristics he cites are not present here, as Plaintiff has not alleged any facts suggesting that Defendants lied about and/or fabricated the existence of the underlying loss. Rather, Plaintiff simply denies that he was responsible for the loss.

As Plaintiff has failed to allege facts sufficient to implicate a viable public policy exception to Pennsylvania's employment at-will doctrine,[4] Plaintiff's wrongful termination claim in Count IV of the Complaint will be dismissed.[5]

### III. Conclusion

For the above stated reasons, Defendants' Motion to Dismiss will be granted in part and denied in part. Count IV of the Complaint, wrongful termination, will be dismissed with prejudice. Additionally, Counts III and VII of the Complaint have previously been dismissed with prejudice pursuant to a stipulation of the parties. (*See* Doc. 7, *generally*; Doc. 10, *generally*). As such, Plaintiff will be permitted to proceed in this action with his claims in Counts I, II, V, and VI of the Complaint.

An appropriate order follows.

September 21, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

---

[4] The authority cited by Plaintiff, *Roberts v. Tandy Corp.*, No. 90-0939, 1990 WL 69090, at *1-5 (E.D. Pa. May 21, 1990), is not to the contrary. For one, *Roberts* did not discuss the plaintiff's wrongful termination claim. Rather, in that case, the court found that the averments of extortion in the plaintiff's complaint, including purported violations of 18 Pa. C.S.A. § 3923(a)(7), adequately alleged predicate acts for a pattern of racketeering as required for the plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. *See id*. at *4-5. Ultimately, though, the court dismissed the RICO claim (the only claim which provided for federal jurisdiction) for failure to properly plead the existence of an enterprise. *See id*. at *7. As such, the court also dismissed the plaintiff's claim that his termination violated public policy when the plaintiff was purportedly discharged from employment because he was going to testify against his employer in litigation brought by a former employee. *See id*. at *1-2. Thus, unlike here and *Reese*, the plaintiff's wrongful termination claim in *Roberts* was not based on Pennsylvania's theft by extortion statute. *See id*. *Roberts* is inapposite to the matter *sub judice*.

[5] The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Because Plaintiff is unable to identify a public policy exception to Pennsylvania's general principles of at-will employment, the wrongful termination claim will be dismissed with prejudice as amendment would be futile.